# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**SEALED**

v.

**ALEKSANDER V. BERMAN,**
a/k/a "Alex Berman,"
**JUSTIN ERIC KING,**
and
**VYACHESLAVE ADOL'FOVICH FINKEL,**
a/k/a "Stan Finkel,"
a/k/a "Slava Finkel"

**INDICTMENT**

3:07 cR 114/LAC

---

## THE GRAND JURY CHARGES:

### COUNT ONE

### A. INTRODUCTION

1.  Eurohouse Holding Corp. ("Eurohouse") was an organization incorporated

in the State of Georgia on or about December 6, 1999 and registered in the State of

Florida on or about April 22, 2002. Eurohouse was located at 1887 Shalimar Drive, N.E.,

Atlanta, Georgia, 419 Anderson Drive, Destin, Florida and 65 Paginet Way, Destin,

Florida. The listed purpose for Eurohouse was janitorial services.

2.  Woland, Inc. ("Woland") was an organization incorporated in the State of

Georgia on or about March 31, 2006 and registered in the State of Florida on or about

August 24, 2006. Woland was located at 1977 Clairmont Terrace, N.E., Atlanta, Georgia



OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PEN. DIVISION

07 SEP 18    AM 9:27

Returned in open court pursuant to Rule 6(f)

_9-18-2007_
Date

_Miky Davis_

United States Magistrate Judge

and 50 Garnet Bayou Road, Santa Rosa Beach, Florida. The listed purpose for Woland was hotel support services.

3. Defendant **ALEKSANDER V. BERMAN, a/k/a "Alex Berman,"** (hereinafter referred to as **BERMAN**) was the chief financial officer of Eurohouse and was a fifty (50) percent shareholder of Woland.

4. Defendant **JUSTIN ERIC KING** (herein after referred to as **KING**) was an officer of Eurohouse and was an employee of Woland.

5. Defendant **VYACHESLAVE ADOL'FOVICH, a/k/a "Stan Finkel," a/k/a "Slava Finkel,"** (herein after referred to as **FINKEL**) was an employee of Eurohouse.

6. Under United States laws and regulations, non-citizens of the United States ("aliens") are not permitted to work in the United States unless they obtain employment authorization from the United States Government.

7. Aliens living outside of the United States can apply for a non-immigrant visa referred to as an H-2B visa. The H-2B visa permits aliens to work in the United States for a specified, temporary period of time.

8. An employer seeking to employ temporary foreign employees was required to use a process involving at least three steps and at least three government entities: a state labor agency, the United States Department of Labor ("DOL"), and the United States Department of Homeland Security, Citizenship and Immigration Services ("CIS").

2

9.      The state labor agency in Florida is the Agency for Workforce Innovation ("AWI").

10.     The state labor agency in Louisiana is Louisiana Works, Office of Workforce Development.

11.     A prospective employer is required to file a DOL Application for Alien Employment Certification ("ETA-750") with the state labor agency, for example, AWI. The application sets forth the name of the employer, the address of the employer and where the aliens will work, the job being offered, the rate of pay, the qualifications required of the prospective alien employee, the number of openings to be filled by aliens and dates of expected employment. The employer must also describe in detail efforts to recruit qualified United States workers for the job opportunity and the results of those efforts. The ETA-750 application must be completed and signed under penalty of perjury by the prospective employer. The state labor agency reviews the ETA-750 for completeness, ensures that the employer is offering the prevailing wage for the job listed in the ETA-750, and oversees any advertising the employer might be required to do as part of the labor certification process.

12.     After the ETA-750 is reviewed by the state labor agency, it is forwarded to DOL for consideration and certification. If DOL certifies the ETA-750, then DOL issues the certified ETA-750 with an original stamped certification that contains the signature of the certifying DOL officer. The DOL officer also issues the prospective employer a "Final Determination Letter," which notifies the employer that the request for temporary

3

foreign workers has been certified based upon the ETA-750 and the supporting documentation.

13. Once DOL issues the prospective employer a certified ETA-750, the employer is required to submit the original ETA-750, along with a Petition for Nonimmigrant Worker ("I-129") to CIS. The I-129 petition must be completed and signed under penalty of perjury by the prospective employer. In the I-129 petition, the employer represents that there is a specific job to fill and describes the nature, location, terms, and requirements of the job.

14. If CIS approves the I-129 petition, a CIS employee notes the approval on the original I-129 petition, and designates the number of H-2B temporary foreign worker positions approved on the I-129. The prospective employer is notified by letter that the I-129 petition has been approved. If CIS approves the I-129 petition, CIS generates a Notice of Action ("I-797") and a copy is sent to the employer and the appropriate United States Embassy.

15. Aliens seeking to enter the United States as an H-2B temporary worker are required to complete an Application for a Nonimmigrant Visa ("DS-156"). The alien must submit the DS-156 form to the United States Embassy or United States Consulate in the country from which they are applying.

16. Once the appropriate United States Embassy or Consulate receives the approved I-797 from CIS, the United States Department of State issues H-2B visas to qualified aliens.

4

17.    Once an alien receives an H-2B visa, the alien is permitted to apply for entry into the United States and work for the petitioning employer.

## B. CHARGE

That from on or about April 22, 2002, through the date of the return of this Indictment, in the Northern District of Florida and elsewhere, the defendants,

**ALEKSANDER V. BERMAN,**
**a/k/a "Alex Berman,"**
**JUSTIN ERIC KING,**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL,**
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel,"**

did knowingly combine, conspire, confederate and agree together and with other persons, known and unknown, to make under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, and to knowingly subscribe as true, false statements with respect to a material fact in applications, affidavits and other documents required by the immigration laws and regulations prescribed thereunder, and to knowingly present such applications, affidavits and other documents containing false statements, in violation of Title 18, United States Code, Section 1546(a).

## C. MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

1.    The purpose of the conspiracy was for the defendants and others to unjustly enrich themselves by preparing and submitting fraudulent ETA-750 applications, fraudulent I-129 petitions, and related applications to the United States Government.

5

2.     The defendants and others prepared fraudulent ETA-750 applications using the names and addresses of hotels and resorts located in the Northern District of Florida and elsewhere. In these ETA-750 applications, the defendants and others requested a certain number of "unnamed" foreign workers to work at specific hotels and specified the type of job being offered, the hourly rate of pay for the job, and the qualifications that the hotels required of the prospective alien employees.

3.     The defendants and others submitted the ETA-750 applications to the state labor agency. In the submitted ETA-750 applications, one or more of the co-conspirators posed as the president and an authorized representative of various hotels including, but not limited to the following: (1) Ramada Inn - Destin; (2) Hilton Sandestin Beach Golf Resort and Spa; (3) Embassy Suites Hotel, Destin - Miramar Beach; and (4) Bay Point Marriott Resort Golf and Yacht Club.

4.     These ETA-750 applications were fraudulent and contained falsehoods, including (1) forged signatures and declarations, (2) false assertions that the defendants and others represented the hotels listed in the applications, and (3) false statements about the jobs listed in the applications.

5.     It was further part of the conspiracy that the defendants and others created letters on the hotels' letterhead without authorization from the hotels. The letters contained falsehoods, including the hotels' need to hire temporary workers as housekeepers during the seasonal tourist season. The letters contained the signature block and signature of one or more of the co-conspirators and forged signatures of persons

6

purporting to be authorized representatives of each the hotels. The letters were submitted to the state labor agency as supporting documentation to the ETA-750.

6.    It was further part of the conspiracy that the defendants and others placed advertisements for housekeeping jobs in newspapers. The state labor agency and the DOL require employers to attempt to find qualified United States workers to fill vacant jobs before certifying foreign workers.

7.    It was further part of the conspiracy that after the DOL certified the ETA-750 applications, the defendants and others prepared and submitted I-129 petitions to CIS. These I-129 petitions were based upon the fraudulently obtained DOL labor certifications. The I-129 petitions submitted to CIS contained falsehoods, including false assertions that the defendants and others represented the hotels listed in the petitions.

8.    Following the approval of the I-129 petitions by CIS, aliens came to the United States and worked for various hotels as Eurohouse contract employees based on non-immigrant visa applications that were not authorized by any hotel.

### D. OVERT ACTS

1.    On or about April 22, 2002, Eurohouse was registered in the State of Florida.

2.    In or about the summer of 2003, **BERMAN** and Anna Shaulova Czerwien went to the Hilton Sandestin in Destin, Florida and solicited hotel management to hire Eurohouse as a labor contractor to provide cleaning services for the hotel. **BERMAN** and Anna Shaulova Czerwien falsely purported that they had a legal workforce that could

7

be provided to the hotel.

3. On or about June 24, 2003, **BERMAN** signed a service agreement with Enterprise HR on behalf of Eurohouse. Enterprise HR provided employee payroll services for Eurohouse.

4. On or about December 11, 2003, Anna Shaulova Czerwien signed and caused to be submitted an ETA-750 application requesting certification for eight (8) H-2B foreign workers to be employed at the Ramada Inn, Destin, Florida.

5. On or about December 11, 2003, Anna Shaulova Czerwien signed a letter as purported president of the Ramada Inn on Ramada Inn letterhead which letter was included as an attachment with the ETA-750 described in paragraph 4.

6. On or about February 27, 2004, Anna Shaulova Czerwien signed and caused to be submitted an I-129 petition requesting eight (8) H-2B visas for unnamed recipients located in Romania. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 04-105-50028. Subsequently, the United States Embassy in Bucharest, Romania, issued H-2B visas to six (6) Romanian nationals.

7. In or about 2004 and 2005, **BERMAN** and **KING** went to the Ramada Inn, Destin, Florida, and solicited management to hire Eurohouse workers. **BERMAN** and **KING** falsely purported that they had a legal workforce that could be provided to the hotel.

8. On or about December 11, 2003, Anna Shaulova Czerwien signed and caused to be submitted two ETA-750 applications requesting certification for H-2B

8

foreign workers to be employed at the Hilton Sandestin, Destin, Florida. One ETA-750 application requested certification for thirty-two (32) H-2B foreign workers and the other ETA-750 application requested certification for eighty-eight (88) H-2B foreign workers.

9. On or about December 11, 2003, Anna Shaulova Czerwien signed a letter as purported president of the Hilton Sandestin on Hilton Sandestin letterhead. This letter was included as an attachment with the ETA-750 applications described in paragraph 8.

10. On or about February 19, 2004, Anna Shaulova Czerwien signed and caused to be submitted an I-129 petition in follow up with the ETA-750 described in paragraph 8, requesting thirty-two (32) H-2B temporary workers and requesting thirty-two (32) H-2B visas for unnamed recipients located in Romania. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 04-099-52759. Subsequently, the United States Embassy in Bucharest, Romania issued H-2B visas to thirty-two (32) Romanian nationals.

11. On or about February 27, 2004, Anna Shaulova Czerwien signed and caused to be submitted an I-129 petition in follow up with the ETA-750 described in paragraph 8, requesting eighty-eight (88) H-2B temporary workers and requesting sixty-two (62) H-2B visas for unnamed recipients located in Romania. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 04-105-51263. Subsequently, the United States Embassy in Bucharest, Romania issued H-2B visas to sixty-five (65) Romanian nationals.

9

12.     On or about March 3, 2004, Anna Shaulova Czerwien signed and caused to be submitted an I-129 petition in follow up with the ETA-750 described in paragraph 8, requesting eighty-eight (88) temporary workers and requesting twenty-six (26) H-2B visas for unnamed recipients located in Bulgaria. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 04-108-50296. Subsequently, the United States Embassy in Sofia, Bulgaria, issued H-2B visas to twenty-six (26) Bulgarian nationals.

13.     On or about April 7, 2004, a group of aliens arrived at the Sexton Seafood parking lot in Destin, Florida, and were directed by **FINKEL** to the Oaks Inn, located in Destin, Florida.

14     On or about April 7, 2004, **FINKEL** signed a lease as landlord for the Oaks Inn with S.G. S.G. is a Romanian citizen who entered the United States on an H-2B visa to work at the Hilton Sandestin under SRC # 04-099-52759. **FINKEL** required S.G. to pay a $200 deposit and $250 per month for rent.

15.     On or about April 7, 2004, **FINKEL** required several aliens including, M.K. and L.A., to sign housing leases and employment contracts. **FINKEL** threatened the aliens with deportation if they did not sign the new employment contracts that provided a reduced rate of pay compared to the original offers of employment. Both M.K. and L.A. were required by **FINKEL** to pay a $200 deposit, $250 per month for rent and $30 a month for a transportation fee. Both M.K. and L.A., Romanian citizens, entered the United States on H-2B visas issued under SRC # 04-105-51263 to work at the

10

Hilton Sandestin.

16.      From on or about April of 2004 through September of 2004, **FINKEL** transported aliens from their residences to the hotels.

17.      From on or about April of 2004 through September of 2004, **FINKEL** threatened aliens with deportation if they complained about their housing conditions. The aliens were required to live in over-crowded conditions in various locations provided by Eurohouse. The aliens paid between $250 and $350 per month for rent.

18.      On or about June 3, 2004, **BERMAN** signed a contract with the Bay Point Marriott to provide twenty (20) temporary workers.

19.      On or about October 14, 2004, Anna Shaulova Czerwien signed and caused to be submitted an ETA-750 application requesting certification for ninety-five (95) H-2B foreign workers to be employed at the Embassy Suites, Destin-Miramar Beach, Florida.

20.      On or about October 14, 2004, Anna Shaulova Czerwien signed a letter as purported president of the Embassy Suites on Embassy Suites' letterhead which letter was included as an attachment with the ETA-750 application described in paragraph 19.

21.      On or about May 24, 2005, Anna Shaulova Czerwien signed and caused to be submitted an I-129 petition requesting ninety-five (95) H-2B visas for unnamed recipients located in Bulgaria. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 05-170-52712. Subsequently, the United States Embassy in Sofia, Bulgaria issued H-2B visas to twenty-eight (28) Bulgarian nationals.

11

22.     On or about October 14, 2004, Anna Shaulova Czerwien signed and caused to be submitted an ETA-750 application requesting certification for one hundred ten (110) foreign workers to be employed at the Bay Point Marriott, Panama City Beach, Florida.

23.     On or about October 14, 2004, Anna Shaulova Czerwien signed a letter as purported president of the Bay Point Marriott on Bay Point Marriott's letterhead which letter was included as an attachment with the ETA-750 described in paragraph 22.

24.     On or about May 24, 2005, Anna Shaulova Czerwin signed and caused to be submitted an I-129 petition requesting one hundred ten (110) H-2B visas for unnamed recipients located in Bulgaria. Thereafter, CIS approved the I-129 petition and the petition was assigned SRC # 05-170-52726. Subsequently, the United States Embassy in Sofia, Bulgaria issued H-2B visas to fifty-one (51) Romanian nationals.

25.     From on or about May of 2005 through September of 2005, **KING** hand delivered two (2) ETA-750 petitions and accompanying paperwork containing fraudulent information to AWI in Tallahassee, Florida.

26.     On or about July 1, 2005, **FINKEL** transported a number of Bulgarian aliens, including I.I., from a bus stop in Fort Walton Beach, Florida, to the Oaks Inn located in Destin, Florida, where the aliens would reside as directed by Eurohouse. I.I. entered the United States on an H-2B visa issued under SRC # 05-170-52726 to work at the Bay Point Marriott, Panama City Beach, Florida.

27. On or about October 15, 2005, **KING** signed an I-129 petition assigned number SRC # 06-051-52584 for one (1) alien. This I-129 petition adopted the I-129 petition previously assigned SRC # 05-170-52726. The I-129 petition signed by **KING** listed the petitioning employer as "Eurohouse DBW Sandestin Golf and Beach Resort." **KING** also signed a letter, as general manager, dated November 30, 2005, on Eurohouse letterhead that stated, "...we originally filed an I-129 to bring her to the country under H2B visa program. She has worked for our company since her arrival." **KING** signed an additional letter, as general manager, on Eurohouse letterhead addressed to CIS requesting an extension of an H-2B worker's authorized stay.

28. On or about December 2, 2005, **KING** mailed and cause to be submitted the I-129 petition and supporting documents referenced in paragraph 28 from the United States Post Office located in Miramar Beach, Florida, to CIS located in Mesquite, Texas.

29. On or about January 10, 2006, **KING** signed a service agreement on behalf of Eurohouse with RT Destin, LLC, d/b/a/ Embassy Suites, to supply workers for Embassy Suites.

30. On or about February 17, 2006, **KING** signed a sworn statement attesting to the Diplomatic Security Service of the United States Department of State that he had been the general manager of Eurohouse for approximately one year. **KING** stated that his responsibilities were to "... maintain all office records, ensure (sic) that the U.S. Visa Petitions and Labor Documents are filed and ensure (sic) that the contracts for the foreign service nationals are completed. The foreign service nationals sign employment contracts

13

and are provided transportation and housing while employed at Eurohouse. I also manage the foreign service employees in day to day operations. I ensure that Our (sic) customers are satisfied with the service that we provide."

31.    On or about February 17, 2006, **BERMAN** signed a sworn statement attesting to the Diplomatic Security Service of the United States Department of State that he had been the regional director of Eurohouse for approximately three (3) years. **BERMAN** stated that Eurohouse subcontracted with other corporations, such as hotels, to provide contract management and cleaning services using foreign nationals as temporary workers who entered the United States on H-2B visas. **BERMAN** said his responsibilities as regional director of Eurohouse included recruiting potential employees and managing the employees on a daily basis.

32.    On or about July of 2006, **KING** requested that the hotel management at Embassy Suites prepare a letter on Embassy Suites' letterhead. **KING** provided Embassy Suites management with the text that was to be included in the letter.

33.    From on or about March of 2006 through July of 2007, **KING**, initially representing Eurohouse and later Woland, picked up checks issued by Embassy Suites to satisfy invoices for workers provided by Eurohouse and Woland. **KING** then deposited the Embassy Suites checks into various Eurohouse and Woland bank accounts.

34.    On or about June 6, 2006, **BERMAN** signed a Eurohouse check for workers' compensation insurance coverage. The check was written for $684.00 and paid to the order of Capricorn Coverage, Inc.

14

35. On or about February 20, 2007, **BERMAN** signed and caused to be submitted an ETA-750 application requesting certification for ninety (90) H-2B foreign workers to be employed at the Embassy Suites, Destin, Florida. Included as an attachment to the ETA-750 application was a fraudulent service agreement purportedly between Woland and Embassy Suites.

36. On or about February 20, 2007, **BERMAN** signed and caused to be submitted an ETA-750 application requesting certification for ninety (90) H-2B foreign workers to be employed at the Seascape Resort, Destin, Florida. Included as an attachment to the ETA-750 application was a fraudulent service agreement purportedly between Woland and Seascape Resort.

37. On or about April of 2002 through August 22, 2007, **FINKEL** stored on his laptop computer the following documents which included, but are not limited to previously submitted ETA-750 applications, I-129 petitions and I-797 forms; various fraudulent documents purportedly from hotels; templets to create letters purportedly from hotels; and logo images for various hotels.

All in violation of Title 18, United States Code, Sections 371 and 1349.

## COUNT TWO THROUGH SIX

The allegations contained in Count One, Sections A, C and D of this Indictment are hereby realleged and incorporated by reference herein.

That on or about the dates listed below, in the Northern District of Florida and elsewhere, the defendants,

15

**ALEKSANDER V. BERMAN,**
**a/k/a "Alex Berman,"**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL,**
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel,"**

did knowingly make under oath, and as permitted under penalty of perjury under Title 28,

United States Code, Section 1746, and did knowingly subscribe as true, false statements

with respect to a material fact in applications, affidavits and other documents required by

the immigration laws and regulations prescribed thereunder, and did knowingly present

such applications, affidavit and other documents containing false statements, that is:

| Count | Alien Beneficiary | Purported Employer | Position | Date of ETA-750 Application |
|-------|-------------------|--------------------|----------|-----------------------------|
| 2 | 8 unnamed workers | Ramada Inn - Destin | Housekeeper | December 11, 2003 |
| 3 | 88 unnamed workers | Hilton Sandestin Beach Golf Resort & Spa | Housekeeper | December 11, 2003 |
| 4 | 32 unnamed workers | Hilton Sandestin Beach Golf Resort & Spa | Housekeeper | December 11, 2003 |
| 5 | 95 unnamed workers | Embassy Suites Hotel, Destin - Miramar Beach | Housekeeper | October 14, 2004 |
| 6 | 110 unnamed workers | Bay Point Marriott Resort, Golf and Yacht Club | Housekeeper | October 14, 2004 |

All in violation of Title 18 United States Code, Sections 1546(a) and 2.

## COUNTS SEVEN THROUGH ELEVEN

The allegations contained in Count One, Sections A, C and D of this Indictment

are hereby realleged and incorporated by reference herein.

That on or about the dates listed below, in the Northern District of Florida and

elsewhere, the defendants,

### ALEKSANDER V. BERMAN,
### a/k/a "Alex Berman,"
### JUSTIN KING,
### and
### VYACHESLAVE ADOL'FOVICH FINKEL,
### a/k/a "Stan Finkel,"
### a/k/a "Slava Finkel,"

did knowingly make under oath, and as permitted under penalty of perjury under Title 28,

United States Code, Section 1746, and did knowingly subscribe as true, false statements

with respect to a material fact in applications, affidavits and other documents required by

the immigration laws and regulations prescribed thereunder, and did knowingly present

such applications, affidavit and other documents containing false statements, that is:

| Count | Alien Beneficiary | Purported Employer | Position | Date of ETA-750 Application |
|-------|-------------------|--------------------|----------| ----------------------------|
| 7 | 70 unnamed workers | Four Points Sheraton | Housekeeper | July 10, 2006 |
| 8 | 85 unnamed workers | Seascape Resort | Housekeeper | July 27, 2006 |
| 9 | 90 unnamed workers | Seascape Resort | Housekeeper | February 20, 2007 |
| 10 | 90 unnamed workers | Embassy Suites | Housekeeper | February 20, 2007 |

17

| Count | Alien Beneficiary | Purported Employer | Position | Date of ETA-750 Application |
|-------|-------------------|--------------------|----------|-----------------------------|
| 11 | 50 unnamed workers | Four Points Sheraton | Housekeeper | February 21, 2007 |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT TWELVE

The allegations contained in Count One, Sections A, C and D of this Indictment

are hereby realleged and incorporated by reference herein.

That from on or about April 22, 2002, through the date of the return of this

Indictment, in the Northern District of Florida and elsewhere, the defendants,

**ALEKSANDER BERMAN,**
**a/k/a "Alex Berman,"**
**JUSTIN ERIC KING,**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL,**
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel,"**

did knowingly combine, conspire, confederate and agree with other persons known and

unknown, for the purpose of commercial advantage and private financial gain, to

encourage and to induce aliens to come to, enter and reside in the United States, knowing

and in reckless disregard of the fact that such coming to, entry and residence was and

would be in violation of law.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv),

(a)(1)(A)(v)(I) and (a)(1)(B)(i).

18

## COUNTS THIRTEEN THROUGH SEVENTEEN

The allegations contained in Count One, Sections A, C and D of this Indictment are hereby realleged and incorporated by reference herein.

That on or about the dates listed below, in the Northern District of Florida and elsewhere, the defendants,

**ALEKSANDER BERMAN,**
**a/k/a "Alex Berman,"**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL,**
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel,"**

did knowingly, willfully and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises related to a material fact, and for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money, did cause to be sent, delivered and moved by the United States Postal Service items as described below:

| Count | Date | Item Mailed | Place of Mailing |
|-------|------|-------------|------------------|
| 13 | February 2, 2004 | ETA-750 package for 32 cleaners for the Hilton Sandestin | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 14 | February 11, 2004 | ETA-750 package for 88 cleaners for the Hilton Sandestin | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 15 | February 11, 2004 | ETA-750 package for 8 cleaners for the Ramada Inn | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 16 | December 10, 2004 | ETA-750 package for 95 cleaners for Embassy Suites | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 17 | December 10, 2004 | ETA-750 package for 110 cleaners for Bay Point Marriott | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS EIGHTEEN THROUGH TWENTY-SEVEN

The allegations contained in Count One, Sections A, C and D of this Indictment

are hereby realleged and incorporated by reference herein.

That on or about the dates listed below, in the Northern District of Florida and

elsewhere, the defendants,

**ALEKSANDER BERMAN,**
**a/k/a "Alex Berman,"**
**JUSTIN KING,**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL**,
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel,"**

20

did knowingly, willfully and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations and promises related to a material fact, and for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money, did cause to be sent, delivered and moved by the United States Postal Service items as described below:

| Count | Date | Item Mailed | Place of Mailing |
|-------|------|-------------|------------------|
| 18 | December 2, 2005 | I-129 petition package for 1 alien housekeeper | Mailed from Miramar Beach, Florida to USCIS TSC, Mesquite, Texas |
| 19 | April 19, 2006 | ETA-750 package for 115 cleaners for Four Points Sheraton | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 20 | August 29, 2006 | ETA-750 package for 70 cleaners for Four Points Sheraton | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 21 | August 29, 2006 | ETA-750 package for 80 cleaners for Embassy Suites | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 22 | September 1, 2006 | ETA-750 package for 80 cleaners for Embassy Suites | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 23 | September 1, 2006 | ETA-750 package for 70 cleaners for Four Points Sheraton | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 24 | September 1, 2006 | ETA-750 package for 105 cleaners for Seascape Resort and Conference Center | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 25 | October 6, 2006 | ETA-750 package for 85 cleaners for Seascape Resort and Conference Center | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 26 | March 23, 2007 | ETA-750 package for 90 cleaners for Ebassy (sic) Suites | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |
| 27 | March 23, 2007 | ETA-750 package for 90 cleaners for Seascape Resort and Conference Center | Mailed from AWI, Tallahassee, Florida to DOL, Atlanta, Georgia |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Twenty-Seven of this

Indictment are hereby realleged and incorporated by reference for the purpose of alleging

forfeitures to the United States pursuant to the provisions of Title 18, United States Code,

Section 982 and Title 8, United States Code, Section 1324(b).

From their engagement in the violations alleged in Counts One through Twenty-

Seven of this Indictment, punishable by imprisonment for more than one year, the

defendants,

**ALEKSANDER V. BERMAN,**
**a/k/a "Alex Berman,"**
**JUSTIN ERIC KING,**
**and**
**VYACHESLAVE ADOL'FOVICH FINKEL,**
**a/k/a "Stan Finkel,"**
**a/k/a "Slava Finkel"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)

and Title 8, United States Code, Section 1324(b), all of their interest in:

A.    Property constituting or derived from any proceeds the defendants

obtained directly or indirectly as the result of such violations;

B.    Property used in any manner or part to commit or to facilitate the

commission of such violations.

C.    The property described in A and B above include, but are not limited to,

the following:

23

1. The sum of \$3,200,000.00 in United States currency.

2. The real property commonly known as 2035 Shalimar Drive, Atlanta,

Georgia, more particularly described as:

> BEGIN AT AN IRON PIN PLACED ON THE
> SOUTHEASTERLY RIGHT-OF-WAY OF SHALIMAR
> DRIVE (50 FOOT RIGHT-OF-WAY) 144.58 FEET
> SOUTHWESTERLY, RIGHT-OF-WAY OF
> CLAIRMONT TERRACE (50 FOOT RIGHT-OF-WAY);
> THEN LEAVE SAID RIGHT-OF-WAY AND RUN
> SOUTH 62°56 MINUTES 09 SECONDS EAST 101.8
> FEET TO AN IRON PIN PLACED ON THE WESTERLY
> LINE OF LOT 2 OF THE ABOVE REFERENCED
> BLOCK, UNIT, AND SUBDIVISION; THEN RUN IN A
> NORTHEASTERLY DIRECTION ALONG SAID
> RIGHT-OF-WAY ALONG A CURVE TO THE LEFT
> (SAID CURVE HAVING A CORD DISTANCE OF 23.56
> FEET ON A BEARING OF NORTH 30°31 MINUTES 49
> SECONDS EAST AND A RADIUS OF 630.71 FEET) AN
> ARC DISTANCE OF 23.56 FEET TO A POINT ON SAID
> RIGHT-OF-WAY; THENCE CONTINUE ALONG SAID
> RIGHT-OF-WAY NORTH 27°03 MINUTES 51
> SECONDS EAST, 84.24 FEET TO AN IRON PIN
> PLACED AND THE POINT OF BEGINNING.

3. The real property commonly known as 50 Garnett Road, Santa Rosa

Beach, Florida, more particularly described as:

> LOT 2, GARNETT BAYOU ESTATES, ACCORDING
> TO THE PLAT THEREOF RECORDED IN PLAT BOOK
> 13, PAGE 25, OF THE PUBLIC RECORDS OF
> WALTON COUNTY, FLORIDA.

4. 2001 Mercedes Benz S500, bearing Vehicle Identification Number

WDBNG75J21A184105 registered to Alexander Berman;

5.     2000 Mercedes Benz E320 – Sedan, bearing Vehicle Identification Number WDBJF65J0YB108513 registered to Eurohouse Holding Inc., 65 Paginet Way, Destin, Florida 32550;

6.     2000 Nissan Xterra XE/SE, bearing Vehicle Identification Number 5N1ED28TXYC507224 registered to Eurohouse Holding Inc., 65 Paginet Way, Destin, Florida 32550;

7.     2000 Ford Econoline E150, bearing Vehicle Identification Number 1FMRE11L7YHB41809 registered to Eurohouse Holding Inc., 65 Paginet Way, Destin, Florida 32550;

8.     1999 Ford Econoline E250, bearing Vehicle Identification Number 1FTNS24L4XHC09169 registered to Eurohouse Holding Inc., 65 Paginet Way, Destin, Florida 32550;

9.     1998 Ford Winstar Wagon, bearing Vehicle Identification Number 2FMZA5144WBC49195 registered to Eurohouse Holding Inc., 65 Paginet Way, Destin, Florida 32550;

10.     1995 Nissan Quest XE/GXE, bearing Vehicle Identification Number 4N2DN11W6SD861428 registered to Alexander Berman; and

11.     1993 Mercedes Benz 500SEL, bearing Vehicle Identification Number WDBGA51E1PA096727 registered to Alexander Berman.

If any of the property subject to forfeiture as a result of any act or omission of the defendants:

A.      cannot be located upon the exercise of due diligence;

B.      has been transferred or sold to, or deposited with, a third person;

C.      has been placed beyond the jurisdiction of this Court;

D.      has been substantially diminished in value; or

E.      has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p), which is incorporated by reference in Title 18, United States Code, Section

982(b), to seek forfeiture of any other property of said defendants up to the value of the

above forfeitable property.

A TRUE BILL

FOREPERSON

9/18/2000
DATE

GREGORY R. MILLER
United States Attorney

TIFFANY H. EGGERS
Assistant United States Attorney

ARLENE REIDY
Trial Attorney Domestic Security Section
United States Department of Justice

26